(No. 21333.—

THE PEOPLE ex rel. W. T. Baird, County Collector, Appellee, vs. THE ST. LOUIS MERCHANTS BRIDGE TERMINAL RAILWAY COMPANY, Appellant.

*Opinion filed June 24, 1932—Rehearing denied October 12, 1932.*

J. L. HOWELL, and KRAMER, CAMPBELL, COSTELLO & WIECHERT, for appellant.

ALVIN C. BOHM, State's Attorney, (T. T. HINDE, and WILLIAM M. P. SMITH, of counsel,) for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

The St. Louis Merchants Bridge Terminal Railway Company filed objections in the county court of Madison county to an application for a judgment and order of sale for taxes amounting to $433.32 levied by school district No. 127 and $96.18 levied by school district No. 128, in said county. The taxes were for the year 1930. Objections were overruled and judgment entered accordingly. An appeal was taken to this court. The question involved relates to the application of the so-called Juul law, entitled "An act concerning the levy and extension of taxes." The objections to the taxes of district No. 127 were heard partly

on stipulation and partly on oral proof, while the objections concerning the taxes for district No. 128 were heard solely on stipulation. There is no controversy concerning the facts.

The maximum rate authorized for school taxes in district No. 127 was $2.75 on each $100 valuation. The amount certified to the county clerk for extension was $160,200. The total assessed value of all property in the district for 1930 as equalized by the board of review was $5,860,280. On this valuation the county clerk determined that a rate of $2.7354 would produce the amount certified. To this rate he added enough for loss and costs of collection to make a total rate of $2.75, which he employed in the extension of the taxes.

The maximum rate authorized for school taxes in district No. 128 was $1.37½ on each $100 valuation. The county clerk ascertained that a rate of $1.37 applied to the valuation as equalized by the board of review would produce the amount levied and certified. The State Tax Commission made a reduction on lands in Madison county of fifteen per cent for 1930. The total valuation of all property in district No. 127 as equalized by the commission was $5,772,404, instead of $5,860,280 as equalized by the board of review. The total valuation of all property in district No. 128 as equalized by the State Tax Commission was $3,432,261, instead of $3,550,841 as equalized by the board of review.

It is the contention of the objector that the county clerk, in taking the valuation fixed by the board of review as a basis in determining the amount of the maximum tax authorized to be levied for school purposes, ignored the provisions of section 1 of the Juul law and thereby extended an excessive tax against its property. Appellee contends that section 1 of the Juul law has no application where the amount levied and certified can be produced by a rate authorized by law upon an assessment fixed by the board of review. It is also the contention of appellee that the

amounts certified to the county clerk for school taxes are exempted from the provisions of the Juul law. That law was enacted in 1901. Section 1 provided that "in determining the amount of the maximum tax authorized to be levied by any statute of this State the assessed valuation of the current year of the property in each taxing district, as equalized by the State Board of Equalization, shall be used. And if the amount of any tax certified to the county clerk for extension shall exceed the maximum allowed by law, determined as above provided, such excess shall be disregarded, and the residue only treated as the amount certified for extension." This section has since remained unchanged, except that the words "State Board of Equalization" have been deleted and the words "State Tax Commission" have been inserted in lieu thereof. The language of the section unquestionably declares that the amount of maximum tax authorized to be levied by any taxing district or body shall be determined upon the valuation as equalized by the State Tax Commission and not otherwise. The last sentence of the section provides that if the amount of any tax certified to the county clerk for extension shall exceed the maximum allowed by law when determined upon a basis of the valuation equalized by the State Tax Commission, such excess shall be wholly disregarded in the extension of taxes and only the residue shall be treated as the amount actually certified to the county clerk for extension; that is to say, if a taxing body certifies the sum of $200,000 for extension, and if it be ascertained that only $150,000 can be lawfully extended upon a basis of the commission's equalization, then the county clerk shall proceed as though only $150,000 had been certified to him by such taxing body. Section 2 of the act authorized reductions of tax rates and an apportionment of such reductions when the aggregate of all taxes (exclusive of certain enumerated taxes) certified to be extended against property in any taxing district exceeded five per cent of

the assessed valuation thereof. If the aggregate was in excess of the five per cent the county clerk was directed to reduce the various rates so as to bring the aggregate down to five per cent. The sole scheme of the act was to reduce taxation within fixed limits, but it was provided that in reducing tax levies no school taxes levied in cities exceeding 100,000 inhabitants (except for building purposes) shall be included in the taxes to be reduced. Section 1 prescribed the method which the county clerk should employ in ascertaining the maximum amount of tax which could be extended for any taxing district.

The act of 1901 was of general application, except, as heretofore stated, school taxes levied in districts having a population exceeding 100,000 were not subject to reduction. The act was amended and re-written in 1909. Section 1 remained the same, but section 2 was amended so as to permit a reduction of rates when the aggregate of taxes, exclusive of certain enumerated taxes, exceeded three per cent of the assessed valuation. Section 2 was further amended in 1915, 1917, 1919, 1921, 1923, 1925, 1927, 1928, 1929, 1930 and 1931. The object of some of the amendments was to enlarge or increase the reductions, while of others it was to abridge or prohibit them. It is unnecessary for the purposes of this case to consider such amendments, except, however, in 1930 an amendment was made which expressly limited rate reductions under section 2 to taxing districts having a population of over 200,000. The school districts here involved do not contain that population, and therefore their tax rates are not subject to reduction under that section. However, the county clerk should have proceeded under section 1 to determine the amount of maximum tax authorized to be levied by said school districts upon a basis of the valuation of property as equalized by the State Tax Commission. In doing so he would have found that the amounts certified for extension could not be produced upon the valuations as equalized by the State

492

Tax Commission. His duty was to disregard the excess certified to him. His failure to do so resulted in the levy of an illegal tax against the objector's property of $433.32 for district No. 127 and of $96.18 for district No. 128. The objections should have been sustained as to these items.

The judgment is therefore reversed and the cause remanded to the county court of Madison county, with directions to sustain the objections.

*Reversed and remanded, with directions.*